# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 14-cr-424 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| JINHUANG ZHENG, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of Defendant Jinhuang Zheng ("Zheng") to sever his trial from that of his co-defendant, Mingrui Sun ("Sun") [199]. For the following reasons, Zheng's motion to sever [199] is denied.

**I.  Background**

On November 20, 2014, Zheng, Sun, and four other co-defendants were charged in a two-count indictment [1] with conspiracy to commit extortion and the use of extortionate means to collect an extension of credit in violation of 18 U.S.C. § 984(a)(1). According to the indictment: Zheng was an owner and employee of Company A. Prior to June 1, 2014, Victim A was an employee of Restaurant A. Restaurant A owed a debt to Company A for approximately $40,000 worth of goods supplied by Company A pursuant to a line of credit for which payment had not been made. By June 1, 2014, Victim A was an employee of Restaurant B in Aurora, Illinois. In May 2014, Zheng informed co-defendant Sheng Quan Dong ("Dong") of the debt that Company A owed Restaurant A. Zheng and Dong recruited Sun and co-defendants Bing Liang Chen ("Chen") and Daniel Zhu ("Zhu") to help collect the debt from Victim A. Zheng, Sun and their four co-defendants met and agreed to work together to obtain the money from Victim A through

the use of violence and threats of violence. On June 1, 2014, Zheng, Sun, and their four co-defendants went to Restaurant B and confronted, coerced, and intimidated Victim A through the use of violence and threats of violence. When Victim A refused to pay Restaurant A's debts to Company A, Chen recruited Jack Wu ("Wu") to help him make further threats against Victim A.

Dong, Chen, Zhu, and Wu have entered guilty pleas to the charges brought against them. Zheng and Sun were set to be tried by a jury on August 22, 2016. Sun moved to continue the trial date, and the motion was granted without objection on July 26, 2016. See [203]. Shortly before the continuance was granted, on July 20, 2016, Zheng filed a motion to sever his trial from Sun's. According to Zheng's motion, the co-defendants' trials should be severed because Sun's pre-trial filings indicate that Sun will assert a coercion or duress defense and that Sun "will be able to argue that Zheng hired members of the Black Shadows [street gang] to collect his debt from the alleged Victim, and in turn, codefendant Sun was forced to participate." [199] at 3.

## II. Legal Standard

Rule 8 of the Federal Rules of Criminal Procedure allow an indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8. Joint trials conserve judicial resources and avoid costly, duplicative trials. *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008). Thus, "[t]here is a strong preference that co-conspirators be jointly tried, particularly where, as here, they were indicted together." *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011); see also *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007) ("It is well settled that co-conspirators who are charged together generally should be tried together.").

Under Rule 14(a), the Court has authority to sever co-defendants' trials when "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A defendant who moves for severance must demonstrate that, absent severance, he is likely to be unable to obtain a fair trial. *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000); see also *United States v. Donovan*, 24 F.3d 908, 915 (7th Cir. 1994) ("The defendant's burden is to demonstrate 'severe prejudice' resulting from the district court's refusal to sever." (quoting *United States v. Curry*, 977 F.2d 1042, 1050 (7th Cir. 1992))). To meet his burden, the defendant must demonstrate that "there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "'In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *Goodwin*, 496 F.3d at 644 (quoting *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006)).

A defendant is not entitled to severance "merely because [he] may have a better chance of acquittal in [a] separate trial[]." *Zafiro*, 506 U.S. at 540. "'Even a showing that two defendants have mutually antagonistic defenses, that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right.'" *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (quoting *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001)); see also *United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010) (explaining that *Zafiro*, 506 U.S. at 538, "expressly held that severance is not required when codefendants present mutually antagonistic defenses"); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) ("The mere presentation of mutually antagonistic defenses does not require

severance."). Therefore, "finger-pointing" and "blame-shifting among codefendants, without more, does not mandate severance." *Plato*, 629 F.3d at 650-51. In such cases, "'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539); see also *Zafiro*, 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

## III. Analysis

Zheng argues that severance is necessary in this case because there is a serious risk that a joint trial would compromise his right to a fair trial. First, Zheng argues that his confrontation rights under the Sixth Amendment and *Bruton v. United States*, 391 U.S. 123 (1968), would be violated if the Government were allowed to introduce at the joint trial the confession that Sun made to law enforcement following Sun's arrest. See U.S. Const. amend. VI; *Bruton*, 391 U.S. at 126. In *Bruton*, the Supreme Court held that "because of the substantial risk that [a] jury, despite instructions to the contrary, [will] look[] to the incriminating extrajudicial statements [of a non-testifying co-defendant] in determining [a defendant]'s guilt, admission of [the co-defendant's] confession in [a] joint trial violate[s] [the defendant's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.*

The Government responds that this argument is moot because (1) the Government will not seek to admit Sun's statements to law enforcement as part of its case in chief; and (2) the Government will only seek to admit Sun's statements if Sun offers testimony contrary to his previous statements, in which case Sun would be testifying and there would be no Sixth Amendment confrontation problem. In reply, Zheng argues that the Government has not alleviated his *Bruton* concern because "there could be a need for [the Government] to present a

rebuttal case during which their only option of securing a conviction would rest upon the introduction of codefendant Sun's statements to law enforcement agents." [207] at 2.

The Court concludes that Zheng's alleged *Bruton* concerns do not justify severance. The Government has represented that it will not seek to introduce Sun's statements to police in its case-in-chief and will introduce them in rebuttal only if Sun testifies in his own defense. Based on the Government's representations, to which the Government will be held at trial, the Court sees no possible *Bruton* violation. If Sun chooses to testify in his defense, then Zheng's counsel will have an opportunity to cross-examine him and challenge his post-arrest statements to police. Zheng has not suggested any way that the Government could introduce Sun's post-arrest statements in rebuttal at trial if Sun does not testify. Given the Government's representations that it will introduce Sun's statements to police only if Sun testifies at trial, the Court finds it unnecessary to consider at this time the Government's arguments, made in surreply, concerning whether redaction of Sun's statements would alleviate any *Bruton* concerns. See generally *United States v. Green*, 648 F.3d 569, 575 (7th Cir. 2011) (redacted confession of a nontestifying co-defendant may be admitted without violating Confrontation Clause as long as the redaction does not "obviously" refer to the defendant, but statements that despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately are prohibited under *Bruton*).

Zheng's second argument in support of severance is that his defense and Sun's defense conflict irreconcilably. Zheng expects Sun's defense to be that all of the allegations in the indictment are true, but Sun's actions were nonetheless justified because he was forced to participate in the alleged conspiracy by affiliates of the Black Shadows street gang, who were hired by Zheng to collect the debt from Victim A. Beyond asserting that "the Government's

5

allegations against him are false," [207] at 2, Zheng does not explain what his own defense strategy is going to be or how it may be irreconcilable with Sun's.

In response, the Government submits that Zheng has failed to establish that he would be prejudiced by a joint trial, because he has never articulated the nature of his anticipated defense. The Government further argues that the risk of prejudice must be balanced against concerns of efficiency and fairness. According to the Government, severance would impair judicial economy by doubling the trial time necessary to resolve the case and forcing the same witnesses—who from the Government's perspective have been victims of the charged crime—to testify at two separate trials. In addition, the Government points out that severing the trials would give an undue advantage to the last-tried defendant, who would have an opportunity to hear the Government's witnesses and strategy before participating in his own trial.

In reply, Zheng argues that he would be prejudiced by a joint trial because his defense is that "the government's allegations against him are false." [207] at 2. According to Zheng, this defense is conflicting and irreconcilable with Sun's coercion defense, and "[i]f the jury believes . . . Sun's version of the events, Zheng has no chance of acquittal." [207] at 2. Zheng does not address the Government's argument concerning judicial economy, but argues that the last-tried defendant would not be given any advantage because his and Sun's defenses "are the exact opposite," with Sun's duress defense being unaffected by Zheng's involvement in the alleged conspiracy to commit extortion. [207] at 3.

In its surreply, the Government argues that Zheng and Sun's defenses are not mutually antagonistic because Zheng "could assert any number of possible defenses that are not irreconcilable with Sun's." [211] at 5. (Unfortunately, the Government does not identify what any of these possible defenses might be, leaving the Court to its own speculation.) The

6

Government also directs the Court to *McClurge*, in which defendant McClurge's theory of defense was that he was not involved in the kidnapping for which he was charged, and his co-defendant Alvertis's theory of defense was that McClurge had forced him at gunpoint to participate in the kidnapping. *McClurge*, 311 F.3d at 869. The Seventh Circuit held that the district court did not err in denying McClurge's pre-trial motion for severance, for two reasons. First, the Court determined that McClurge's and Alveritis's defenses were not "*mutually antagonistic*," because "[w]hile Alvertis's was hostile to McClurge's, the converse was not true." *McClurge*, 311 F.3d at 871. Second, the Court explained that even if the co-defendants' defenses were mutually antagonistic, this was not sufficient grounds to require severance "'unless the defendant also shows prejudice to some specific trial right.'" *Id.* (quoting *Mietus*, 237 F.3d at 873).

The Court concludes that Zheng has failed to demonstrate that the potential for prejudice resulting from a joint trial outweighs the interests of judicial economy and fairness. Sun's defense *may* be hostile to Zheng's, because according to Zheng's brief, Sun would admit the allegations of the indictment are true. However, Zheng has not made a clear showing that Sun's defense would implicate Zheng directly. The pre-trial filings on which Zheng relies include the Government's motions in limine, [149] at 9-1, and Zheng's response, [152] at 2-4. There is nothing in either document that suggests that Sun's defense would necessarily implicate Zheng directly in the alleged conspiracy; neither document even mentions Zheng. The closest Sun comes is asserting that "[h]e received a threat while in a car going to the place the alleged crime occurred" and "was at all times surrounded by gang members." [152] at 4. Sun does not assert, as Zheng claims, that "Zheng hired members of the Black Shadows [street gang] to collect his debt from the alleged Victim." [199] at 3.

7

Nor has Zheng established that his defense will necessarily be mutually antagonistic to Sun's defense. For instance, Zheng might assert that there was a case of mistaken identity and he was not involved in the conspiracy at all; so long as Sun did not claim to know Zheng and personally implicate him, a jury could both believe that gang members forced Sun to participate in the conspiracy and that Zheng was not involved in the conspiracy. See *United States v. Murzyn*, 631 F.2d 525, 535 (7th Cir. 1980) (in prosecution for interstate transport and sale of stolen automobiles, district court did not abuse its discretion in denying defendant's motion to sever his trial from that of co-defendant, where defendant's defense was mistaken identity and co-defendant's defense was entrapment and coercion and jury could believe the government's case against co-defendant and still believe defendant's defense); *United States v. Swingler*, 758 F.2d 477, 496 (10th Cir. 1985) (defendants' defenses in drug prosecution, namely, as to first defendant, a general disclaimer of involvement in drug conspiracies, and, as to second defendant, that defendant's participation was under duress or coercion by members of motorcycle gang, were not mutually antagonistic where neither defendant strictly attacked the other, and therefore separate trials of those defendants were not warranted); *United States v. Dhaliwal*, 464 Fed. App'x 498, 2012 WL 805979, at *10 (6th Cir. 2012) (district court did not abuse its discretion in denying drug conspiracy defendant's motion to sever his case from that of his co-defendants, where defendant's position that he was an innocent bystander was not antagonistic to co-defendants' duress defenses because defendant's "claim of innocence was not predicated solely on the guilt of" his co-defendants and defendant was able to cross-examine co-defendant as to any statement inculpating him); cf. *United States v. Dimas*, 3 F.3d 1015, 1020 (7th Cir. 1993) (holding that "defenses of entrapment and non-involvement are not mutually antagonistic" where

8

"the jury could consistently believe one, both, or neither of the defenses, and acceptance of one did not spell doom for the other defendant").

Ultimately, it is irrelevant whether Zheng's and Sun's defenses are mutually antagonistic, because Zheng has failed to articulate any specific trial right that would be prejudiced by a joint trial. *McClurge*, 311 F.3d at 871. At most, Zheng has established that Sun may point a finger at or shift blame to him, but this is insufficient on its own to require severance. *Plato*, 626 F.3d at 650; see also *Zafiro*, 506 U.S. at 538; *Carrillo*, 435 F.3d at 778; *McClurge*, 311 F.3d at 871; *Mietus*, 237 F.3d at 873. Zheng should propose proper limiting instructions to reduce any risk of prejudice. *Plato*, 629 F.3d at 650-51.

Finally, the Court concludes that principles of judicial economy and fairness weigh against severance in this case. The Court must balance the public interest in efficiency and economy which result from a joint trial against the possibility of undue prejudice to the defendant. See *Donovan*, 24 F.3d at 914-15; *United States v. Hanhardt*, 151 F. Supp. 2d 971, 974 (N.D. Ill. 2001). In this case, if severance were granted it would double the number of trial days necessary to resolve the case and require the same witnesses to testify at both trials, which would be a significant burden on the Court's and the Government's resources. Given Zheng's failure to demonstrate undue prejudice, the balance of factors weigh in favor of a joint trial. The Court also agrees with the Government that severing Zheng and Sun's trials would give undue preference to the last-tried defendant. Regardless of whether Zheng and Sun's trial strategies are "opposite" of one another, [207] at 3, it would undoubtedly benefit Zheng (assuming he is tried last) to see the Government put on its witnesses—including Victim A, Employee A, and cooperating witnesses—at Sun's trial. Even if Sun does not contest these witnesses' testimony,

9

Zheng presumably will. Zheng's counsel would have an obvious advantage planning for cross-examination if they were able to get a preview of the witnesses' direct testimony at Sun's trial.

**IV.     Conclusion**

For these reasons, Defendant's motion to sever [199] is denied.

Dated: December 7, 2016

Robert M. Dow, Jr.
United States District Judge