**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 14 CR 424** |
| **vs.** | ) | **Hon. Robert M. Dow, Jr.** |
| | ) | |
| **JINHUANG ZHENG, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT ZHENG'S MOTION FOR JUDGMENT OF ACQUITTAL, OR**
**ALTERNATIVELY FOR A NEW TRIAL**

Now comes the defendant, Jinhuang Zheng, by and through his undersigned

attorney, pursuant to Federal Rules of Criminal Procedure 29 and 33, and

respectfully moves this Honorable Court to enter an order granting a judgement of

acquittal, or alternatively for a new trial.  In support thereof, Zheng offers the

following:

**I.     INTRODUCTION**

Zheng was charged, along with co-defendant Mingrui  Sun and four other co-

defendants in a two count indictment alleging their participating in a conspiracy to

commit extortion, and the use of extortionate means to collect an extension of credit,

in violation of 18 U.S.C. 894(a)(1).  Essentially, Zheng was charged with conspiring

to collect a debt from a former customer, and ultimately, using force in an attempt

to collect the debt, all with the help of his co-defendants.  The indictment set out an

alleged set of events that had occurred on or about May 2014 through on or about

June 2014 in which Zheng, through his friend and co-defendant Shen Quan Dong

recruited several other individuals to travel to Hibachi Grill in order to help recover approximately $40,000 that was owned to Zheng by the restaurants owner. It was the government position that it was Zheng's intention to threaten and intimidate the restaurant's owner into paying back the money that he was legitimately owed.

Zheng's trial was conducted before this Court from April 30, 2016 through May 8, 2018. Throughout the government's case-in-chief, the government presented testimony from the alleged victim and his wife, a cooperating co-defendant, and the lead investigating agents, among others. At the close of the government's case, Zheng orally moved this Court for a judgement of acquittal on all counts pursuant to Federal Rule of Evidence 29(a), arguing that the government had failed to present sufficient evidence to allow a reasonable, rational jury to convict Zheng beyond a reasonable doubt. This motion is still under advisement.

After several hours of deliberation, the jury returned their verdict, finding Zheng guilty of both counts of the indictment. Following the verdict, this Court entered judgment on the finding of guilty. Defense counsel then asked the court, and this Court graciously granted, an extension of time for the filing of these post-trial motions until July 9, 2018. Now, Zheng renews his motion for a judgement of acquittal pursuant to Rule 29 because the evidence atrial was insufficient to sustain the guilty verdicts returned against Zheng on both counts of the indictment. Alternatively, Zheng respectfully requests a new trial. With regard to each of the arguments presented, Zheng incorporates herein, all arguments made in open court,

at sidebar, and that were the subject of any motions or memoranda filed in this case.

## II.  ZHENG IS ENTITLED TO A JUDGEMENT OF ACQUITTAL

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Zheng respectfully moves for a judgement of acquittal.

### a. Legal Standard

Rule 29 of the Federal Rules of Criminal Procedure instructs courts, that upon a defendant's motion, they "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29; s*ee also United States v. Mohamed*, 759 F.3d 978, 803 (7th Cir. 2014). Entry of a judgment of acquittal is appropriate when, considering the evidence in the light most favorable to the government, no rational jury "could have found the existence of each element of the crime beyond a reasonable doubt." *United States v. Kitchen*, 57 F.3d 516, 529 (7th Cir. 1995); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002); *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir.2001). Judgment of acquittal must, therefore, be entered where the government failed to prove even one element of the crime charged beyond a reasonable doubt. *Kitchen*, 57 F.3d at 523 (reversing conviction where government failed to prove element of crime).

Further, the jury's decision may not be based on impermissible inferences and mere speculation. *Mohamed*, 759 F.3d at 810; *see also United States v. Sanchez*, 615 F.3d 836, 845 (7th Cir. 2010) (jury verdict overturned where jury

verdict rested solely on the "piling of inferences upon inferences."). There must be a distinguished line between reasonable inferences and speculation; the government's case cannot be based on "conjecture camouflaged as evidence." *Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001). When "the record is devoid of evidence pointing to guilt," or "evidence on a key element" is "so tenuous that a conviction would be shocking," a judgment of acquittal is required. *United States v. Meadows*, 91 F.3d 851, 855 (7th Cir. 1996) (internal quotations omitted).

**b. Argument**

For the government to convict Zheng, they were required to prove (1) that there was an attempt to collect an extension of credit including attempting to induce in any way the repayment by anyone of a loan or other thing of value for which repayment was expected, whether valid or invalid, whether disputed or acknowledge; or (2) that the attempt to collect involved the use of extortionate means, that is, the use of violence or other criminal means to cause harm to the person or property of anyone; and (3) the defendant knowingly participate in some way in the use of such extortionate means in that attempted collection or punishment. Additionally, the government was required to prove that a conspiracy to engage in such conducted existed and that Zheng knowingly became a member of that conspiracy. Importantly, Zheng would have only done something knowingly if he was aware of the nature of his conduct and did not act through some sort of ignorance, mistake, or accident.

4

Most of the facts surrounding the events leading up to Zheng's indictment are undisputed. Zheng, through his company Ocean Fresh Seafood, was owed approximately $40,000 by Kobe Buffet, which was owned in part by Ronald Lin. On June 1, 2014, Zheng showed up at Hibachi Grill, Lin's new place of employment, in an effort to discuss the outstanding debt owed to Ocean Fresh. That day Zheng arrived at Hibachi Grill with four other individuals. After moving the conversation to the outside of the restaurant, Lin was beaten by the four individuals for a matter was seconds. However, as will be discussed below, the government failed to prove beyond a reasonable doubt that the purpose behind Zheng driving to Hibachi Grill was to use extortionate means to collect the money. Instead, what the evidence showed was that Zheng merely contacted one friend, Shen Quan Dong, to go to Hibachi Grill with him because Zheng believed it would be dangerous for him to go there by himself. What the evidence showed was that it was Dong who recruited other individuals to make the trip with him and Zheng – without Zheng's input. It was never Zheng's intention to threaten, intimidate, or harm Lin and, in order for the government to succeed in their case against him, this is exactly what they had to prove, both for the conspiracy charge and the over act of attempting to collect an extension of credit through the use of extortionate means. And in a case, such as this, where the evidence presentence by the government was "equally consistent with a theory of innocence as a theory of guilt," it "necessarily fails to establish guilt beyond a reasonable doubt." *United States v. Harris*, 942 F.2d 1125, 1129-30 (7th Cir. 1991).

Throughout trial it was established, and is undisputed, that Zheng was a part owner of Ocean Fresh. Ocean Fresh was a frozen seafood distributor that worked with various restaurants in the Midwest, and in particular, the Chicagoland area. As part of their business, Ocean Fresh would often give restaurants their seafood order on credit, if they had established a reliable, trusted business relationship with one another. One of those restaurants was Kobe Buffet, which had two Chicagoland locations; one in Naperville and one in Lombard. Lin was a part owner in Kobe Buffet, but when those restaurants began to fail, he started to work at Hibachi Grill in Aurora. Over the course of 2013, Kobe Buffet racked up approximately a $40,000 debt with Ocean Fresh. Ocean Fresh tried to collect on this debt on a number of occasions to no avail. Zheng decided to confront Lin about this debt in person. When he did so on June 1, 2014, several of the individuals what came with Zheng physically battered Lin outside of Hibachi Grill. The main issue in the case, as it related to Zheng, was whether he went to Hibachi Grill that day with the four other individuals with the specific purpose of extorting Lin into repaying the debt. It was essentially the government's theory that Zheng brought the four individuals with him in order to scare Lin into paying the money owed to Ocean Fresh.

The evidence presented by the government against Zheng was, essentially, threefold. First, the government presented surveillance footage of the physical assault that occurred on June 1, 2014 against Lin. Second, the government presented evidence showing that Ocean Fresh was owed money by Kobe Buffet, that

Zheng was an owner of Ocean Fresh, and that Zheng believed Lin to be associated with Kobe Buffet. Finally, the government presented the testimony of Dong as direct evidence of Zheng requesting Dong to find "friends" to go with them to Aurora, Zheng offering 50% of whatever was collected as payment for their help, and his intent of using extortionate means in an effort to collect on the debt. But as this Court was clearly able to see throughout the course of trial, the evidence adduced by the government through Dong – their star witness – was anything but reliable. Certainly not reliable enough to surmount the beyond-a-reasonable doubt standard they are required to meet. Taken together, it was clear that the evidence against Zheng was such that no reasonable jury would conclude beyond a reasonable doubt that Zheng knowingly and intentionally participated in a conspiracy to use extortionate means to collect on an extension of credit as charged in the indictment.

For the government to succeed, the testimony of Dong had to be credible, but it was obvious that his testimony was anything but that. Dong's testimony at trial was littered with impeached statements, forgotten facts, and flat-out lies. This was not exclusive to just the cross-examination portion of his testimony, but the government's own direct examination. It was truly uncomfortable watching him testify throughout the seemingly never-ending day-and-a-half of testimony. At one point during his testimony – at sidebar – this Court even proclaimed "[o]kay. The witness is killing me. . .There's two possibilities here. Either he's not telling the truth about what he said or the agent inaccurately wrote what he said. . .But you

will be able to impeach him, essentially, through [the agent]." *See* Transcript, May 2, 2018 (Tr.), pgs. 19-20 (morning portion of proceedings). Considering this was the sole witness presented by the government with any direct knowledge of any and all conversations leading up to, and following, the June 1, 2014 incident, the government's case had to rise or fall with Dong.

When an individual is so incredible that no reasonable person could possibly believe him, and no other evidence is more indicative of guilt than innocence, then a Court must enter a judgment of acquittal on behalf of the defendant. *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978); *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985); *United States v. Harris*, 942 F.2d 1125, 1129-30 (7th Cir. 1991). The defense, during its closing argument presented a myriad of statements made by Dong that were obviously and categorically false. The defense pointed out the incredible incentive to lie under which Dong testified in the case. The defense maintains that these inconsistencies, combined with Dong's motivations are sufficient, by themselves, to render Dong's testimony so incredible that no reasonable person could trust his word – beyond a reasonable doubt or otherwise. Aside from the countless of inconsistencies of his statements, Dong lied at every portion of his testimony. Even from the outset of cross-examination, Dong was asked whether he remembered speaking with federal agents throughout the course of their investigations and was directly asked if he *always* told agents the truth. To this inquiry, Dong categorically answered "yes." *See* Tr. at pg. 4. Clearly, this cannot be true considering various statements were used to show that Dong gave

8

the investigating agents conflicting accounts of what happened. Coupling this, with all of the other lies, conflicting statements, and inconsistencies in his statements, which even this Court recognized, *see supra*, the only possible conclusion is that Dong is a habitual liar who cannot be believed. When a witness gives testimony that cannot possibly be believed, that witness's testimony must be set aside.

Without crediting the word of Dong, the government lacks sufficient evidence to convict Zheng. Each piece of evidence that could in any way hint at Zheng's knowledge or intent of the charged offenses was entirely dependent upon the testimony of Dong. Without Dong, each piece of evidence is equally consistent with a theory of innocent as it is with a theory of guilt. The forensic evidence in the case showed that Zheng never once spoke on the phone with any of the other alleged co-conspirators in the case neither before, on the day of, or after the incident in questions. His only communication was with Dong. It was Dong that recruited the other individuals to travel to Aurora with him and Zheng based on his own, independent of Zheng, motivations.

Much of Dong's testimony, both on direct and cross, focused on when and why Zheng contacted him regarding his upcoming trip to Aurora. Dong attempted to testify that Zheng called him on three separate occasions prior to June 1 asking him to find people to go with them on the trip. However, through cross, it was proven that Dong's recollection to the jury regarding these calls was completely fabricated. Even the government, who had all of his phone records for the months in questions, failed to show even a single phone record that corroborated Dong's version of what

had occurred. And it was pivotal for the government's theory that those calls had actually occurred because it is what placed Zheng into a conspiracy. Dong was also unable to provide a realistic scenario in which Zheng offered any sort of payment for Dong's and his friends' help in collecting the debt. Rather, Dong admitted that Zheng had told him he believed that Lin was dangerous both through his reputation and his father's connection to a certain faction of a Chinese mafia. Dong further admitted that none of the individuals discussed using any sort of physical violence, that Zheng was merely attempting to speak with Lin outside of the restaurant, and that once the fighting began, Zheng did not engage with the other. That was the government's case.

The crux of the allegations against Zheng was his motivation in traveling to Aurora with four individuals. Dong failed to give any credible insight into what intended, other than to bring a friend for protection -because that was the truth. The government had to ability to present the testimony of at least one other cooperating co-conspirator, which they chose not to do. What was clear, however, is that the same cooperating witness was working as a government informant at the time of the alleged incident, presumably with his own motivations at the time. In a case where it was undisputed that there was an extension of credit and the use of violence, it was extremely important for the government to prove Zheng's knowledge and intentions surrounding the alleged incident. In using Dong as the sole source for this, they inevitably must fail in meeting their burden.

In this case, the government failed to meet their burden of proof. Dong was so untrustworthy that no reasonable person could believe him and his testimony must be categorically disregarded. Without him, the government's case cannot be maintained. While the government may have proven that Zheng traveled to Hibachi Grill to attempt to collect on an extension of credit, the government failed to show that he did so with the intention to engage in extortionate means or his knowledge of what the other individuals believed their duty was as it related to the reason for them going to Aurora with him. The only evidence offered by the government to impart this requisite knowledge and intention upon Zheng, was through Dong, who provided a story that was inconsistence with other evidence, and more so, a lie. His uncorroborated recollection of events failed to shed any reliable light on the nuances of what occurred leading up to June 1, 2014, which were crucial for the government to sustain convictions on both counts of the indictment. Even this Court recognized during Dong's testimony that he was lying at nearly every opportunity. As such, this Court must enter a judgment of acquittal as to both Counts One and Two.

## III. ALTERNATIVELY, ZHENG IS ENTITLED TO A NEW TRIAL

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Zheng respectfully moves for a new trial.

### a. Legal Standard

A court may grant a new trial "if the interest of justice so requires." Fed.R.Crim.P.33(a). In considering a motion for new trial, this Court "must

11

consider the weight of the evidence, and must grant a new trial if that evidence 'preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999); *quoting United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989); *see also United States v. Morales*, 910 F.2d 467 (7th Cir. 1990) ("If the complete record . . . leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obligated to grant a new trial."), *modified*, 902 F.2d 604 (7th Cir. 1990). In granting a new trial, this Court is afforded wide discretion. *United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002) (district court's decision on prejudice is afforded "great deference").

### b. Argument

To forego repetitiveness, Zheng reincorporates and re-alleges the facts and arguments put forth above in his motion for a judgement of acquittal. These facts and arguments demonstrate, without a doubt, that the jury's verdict was contrary to the weight of the evidence. Essentially, the government's case rested on one material witness, Dong, who had such insurmountable credibility issues, that it should weigh heavily in this Court's decision to order a new trial. *See United States v. Simms*, 508 F.Supp. 1188, 1207 (W.D. La. 1980) ("The government's case depends upon inferences upon inferences dawn from uncorroborated testimony that . . . is subject to questions of credibility").

In addition, Zheng respectfully submits the below-stated points, along with all motions and objections made before, during, and after the trial, that warrant a

new trial, including a cumulative error argument. These errors, individually and cumulatively, coupled with the lack of substantial evidence, jeopardized Zheng's rights, and require a new trial.

### i. Government's Failure to Perfect Prove Up Assertion That Zheng Confessed

The government improperly, and irreparably, compromised Zheng's right to a fair trial when during their cross-examination of him they alleged that he had made admissions to one of his alleged co-conspirators, Daniel Zhu, during a conversation that supposedly happened while Zheng was in custody following his arrest. In an attempt to establish that Zheng's testimony was incredible, the government engaged in a series of questions that in essence asserted that Zheng and Zhu had a conversation – while in custody – that suggested he had made an admission to his conduct. The line of questioning asserted to the jury that during their conversation Zheng advised Zhu that he intended on getting bond and subsequently asking the alleged victim, Lin, not the pursue the case against him. It was further alleged that Zheng indicated that a friend of his was going to contact the victim and ask him to change his story. The defense immediately objected to this line of questioning and called for a mistrial – which this Court denied. Although Zheng denied have any of these conversations, the government never put on Zhu as a witness to prove up the statement. In fact, it was never their intention to call Zhu as a witness, even though he was cooperating, because of his incurable credibility issues. As a result, the jury was left the belief that the government must have known something they (the jury) did not regarding these admissions.

The right to a fair trial includes the right a verdict based solely on the evidence actually introduced at trial. *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *see also Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016) ("a prosecutor may not urge a jury to base its decision on information known to the prosecutor but not presented at trial"). This requirement "goes to the fundamental integrity of all that is embraced in the constitutional concept or trial by jury." *Turner*, 379 U.S. at 472. Thus, it was wholly improper for the government to ask Zheng questions that presumed facts not in evidence unless the government later substantiates those facts. As an example, if a part attempts to impeach a witness with a prior inconsistent statement and the witness denies ever having made that statement, or otherwise equivocates, then it would no doubt incumbent upon the examining party to offer evidence of the statement. *See*, *e.g.* Fed R. Evid. 613.

The cross-examination of Zheng clearly indicated that the government believed it had credible information that Zheng has made this post arrest statements to an individual that unbeknownst to him was cooperating with the government, again. Thus, it was incumbent on the government to present evidence of Zheng's alleged conversation – which the government never did. Further, this error did not go unnoticed by the parties: after the government began its line of questioning, the defense raised an objection to the State's failure to perfect the prove-up the allegations on this point, but was overruled by this Court.

Under the circumstances of the trial, the government's error substantially prejudiced Zheng by magnifying an unproven allegation about Zheng's statement to

14

Zhu which essentially are tantamount to a confession. A reasonable juror might remember the substance of Zheng's testimony but remain uncertain as to what exactly was said on what occasions. It is therefore reasonable that such a juror might therefore be influenced by the government's forceful and contradicted assertion that Zheng made admissions to Zhu while in custody.

The government's case against Zheng was not strong. They presented only one witness who impeded any sort of knowledge or intent upon Zheng – his alleged co-conspirator Dong – who credibility was attacked multiple times on multiple grounds. *See supra.* Dong's incredible testimony was contradicted by that of Zheng. In light of this conflicting evidence, as well as the paramount credibility issues regarding the government's key witness, it would not have been irrational for a jury to conclude that the government failed to prove Zheng's knowledge and intent in using extortionate means to collect an extension of credit. For those reasons, there is a substantial probability that the government's reliance on the alleged-but-unproven statements influenced the jury's guilty verdict.

ii. **Evidence Regarding Severity of Injuries Was Irrelevant and Unduly Prejudicial**

The Court erred by denying Zheng's motion to limit the amount of evidence at trial regarding the severity of Lin's injuries. In an indictment charging Zheng with a conspiracy to knowingly participate in the use of extortionate means to collect and attempt to collect an extension of credit and knowingly participating in the use of extortionate means to collect and attempt to collect an extension of credit, the extent of the victim's injuries is completely irrelevant. However, this Court allowed

the government to present the jury with nearly twenty photographs depicting all angles and close-up of scratches, cuts, bruises, and the like, on the alleged victim. Although threat of force or use of force should undoubtedly be proven by the government at trial, the extent of that force bares no relevance to the charges. Instead, it is merely a tool to help further enflame the jury against Zheng.

A proposition is only considered relevant if it is logically related – directly or indirectly – with at least one of the formal elements of the charges made or defensed raised in a case. Fed.R.Evid. 401, 402; *United States v. Malpeso*, 115 F.3d 155, 163-64 (2d. Cir. 1997). When a proposition of fact is not required to prove a substantive element of the applicable law, it is irrelevant and inadmissible. *See United States v. Klebig*, 600 F.3d 700, 710-11 (7th Cir. 2009) (conviction reversed due to the admission of evidence irrelevant to the charges at issue); *United States v. Pitt-Des Moines, Inc.*, 970 F.Supp. 1359, 1366-67 (N.D. Ill. 1997) (holding that evidence irrelevant to the charge in the indictment was inadmissible). Considering that the extent of injuries is not an element of conspiracy or the use of extortionate means, there is no reason more than one or two, if any, of the photographs should have been admitted.

What is more, the evidence should have been excluded for its unduly prejudice under Rules 401-403 of the Federal Rules of Evidence. *See Old Chief v. United States*, 519 U.S. 172 (1997). In a trial that was essentially shoe-stringed to the testimony of the incredible testimony of Dong, any evidence that was irrelevant or prejudicial should have been excluded as it unfairly tipped the scales in favor of

the government.  The fear in allow the government to present such evidence and testimony is that it may create a warrantless, genuine risk that the emotions of the jury will be "excited to irrational behavior."  *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 2011).  And that is exactly what happened here.  It is not unreasonable that in a case, such as there, were the evidence of guilty is equal to if not less than that of innocence, the government should not be allowed to simply inflame emotions in the jury, causing them to base their decision on emotional factors, rather than any logical connection between the evidence and the elements that must be proven by the government.

The government already had enough evidence in the form of surveillance video footage which depicted the alleged victim being physically assaulted outside of the Hibachi Grill.  There is no reason that the government needed to bootstap this evidence to that of the injuries in order meeting their burden as it related to that threat of force element of the statute.  The photographic evidence of the injuries must therefore have been either completely eliminated or significantly limited prior to trial.

### iii.  Severance from Co-Defendant Sun

This Court erred in denying Zheng's motion to sever his trial from that of his co-defendant, Mingrui Sun.  The Zheng and Sun should have been severed pursuant to both Rule 14 of the Federal Rules of Criminal Procedure and the Sixth Amendment to the United States Constitution.

17

Rule 14 permits a trial court to sever properly joined defendants where it appears that either the defendant or the government will be prejudiced by the joinder. Fed. R. Crim. P. 14; *Zafiro v. United States*, 506 U.S. 534, 535, 538 (1993); *United States v. Lane*, 474 U.S. 438, 447 (1986). The defendant must demonstrate actual prejudice by establishing that absent the granting of a severance emotion, he will be unable to obtain a fair trial. *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000). To meet this burden, the defendant must show that there is a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment as to guilt or innocence. *Zafiro*, 506 U.S. at 539. To that extent, the Seventh Circuit has recognized several circumstances in which actual prejudice warrants severance: (1) conflicting and irreconcilable difference, (2) a massive and complex amount of evidence that makes it almost impossible for the jury to separate evidence as to each defendant, (3) a codefendant's statement that incriminates the defendant, and (4) a gross disparity of evidence between the defendant. *United States v. Clark*, 989 F.2d 1490, 1499 (7th Cir. 1993).

Aside from the reasons previously mentioned in Zheng's original submission for severance and his reply – which he respectfully incorporates into the instant motion – it should be noted that at least one of co-defendant Sun's post-arrest statements was testified to by the investigating agent during his direct examination. In the government's response to Zheng's motion for severance they indicated that they would not adduce at trial any of Sun's pretrial statement.

Instead, the agent testified that during an alleged conversation in Zheng's vehicle prior to the incident – while discussion the alleged payment for the extortion – Sun indicated what language the individuals were speaking. Although it may seem insignificant on its face, it allowed to government to further strengthen their case. It essentially bolstered the government's contention that such a conversation actually occurred, which was disputed by the defense throughout trial.

The fact that the jury had a split verdict between the defendants further illuminates the prejudice faced by Zheng. While it was Zheng's defense that there was no plan for extortion, Sun did not dispute the existence of the conspiracy to commit such and instead focused on his limited knowledge as to why he was there in the first place. And although joint trials are favored, the Seventh Circuit has recognized that separate trials are appropriate when "the defenses are so inconsistent that the making of a defense by one party will lead to an unjustifiable inference of another's guilt," or when "the acceptance of a defense precludes acquittal of other defendants." *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987). In effect, since the jury accepts Sun's defense it prejudiced Zheng. As such, Zheng and Sun's trial should have been severed in order to ensure Zheng's ability to preserve his right to a fair trial.

### iv.  Jury Instructions

The Court erred in giving government-proposed instructions to which Zheng offered objections and in refusing certain jury instructions proposed by Zheng. The

grounds for these objections were stated in court during the jury instruction conference and are, herein, incorporated by reference.

### v. Cumulative Error

Considering, individually, each and every issue discussed throughout this motion warrants a new trial. Further, when taken together with the motions and objections made throughout the court of trial, the limited evidence presented by the government to support the jury's verdict require a new trial in the interest of justice. *See* Fed.R.Crim.P 33. These trial errors, while "in isolation" may be harmless, "when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law." *Alvarez, v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000); *citing Taylor v. Kentucky*, 436 U.S. 478, 487 n. 15 (1978). "To prevent the synergistic effect of these errors from escaping review, courts attempt to determine whether the whole is greater than the sum of its parts. The cumulative effect analysis requires a petitioner to establish two elements: (1) at least two errors were committed in the course of the trial; (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioners a fundamentally fair trial." *Alvarez*, 225 F.3d at 824 (internal citations omitted).

The lack of evidence presented by the government against Zheng, couple with the issues described in this motion shows that the jury most likely convicted Zheng improperly. The jury heard and saw extensive improper and prejudicial evidence regarding injuries sustained by the alleged victim and alleged statements made by

Zheng while in custody pending trial with no corroboration. This coupled with the only material witness with immense credibility issues creates the warranted need for a new trial. Even if these errors individually are insufficient to warrant a new trial, taken together with the motions and objections made during trial necessitate a new trial. As the Seventh circuit reasoned in *Morales*, "if the prosecution's theory and the alternative theory were equiprobable or close to it, [the defendant] would have to be acquitted." 902 F.2d at 608 (ordering new trial where competing evidence at trial did no "permit a confident conclusion" of defendant's guilt), *modified* by, 910 F.2d 467. Where, as here, "the complete record . . . leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal," a new trial is appropriate to promote the interests of justice. *Morales*, 910 F.2d 467.

## Conclusion

The evidence presented by the government throughout the course of a six-day jury trial was insufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Zheng knowingly and intentionally participated in a conspiracy to collect an extension of credit through the use of extortionate means and the overt act of extortion itself. Following the trial, the jury was left with scant and questionable evidence supporting the government's case, causing them to convict Zheng on unreasonable inferences and speculation. Ultimately, this Court should not let the jury "guess" and "assume" Zheng "into the penitentiary." *United States v. Martellano*, 676 F.2d 940, 946 (7th Cir. 1982). For the foregoing reasons,

Zheng respectfully requests this Honorable Court to enter a judgement of acquittal, or in the alternative, order a new trial.

Respectfully submitted,

s/ Vadim A. Glozman
*An Attorney for the Defendant*

Vadim A. Glozman
EDWARD M. GENSON & ASSOCIATES
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015

## **CERTIFICATE OF SERVICE**

I, Vadim A. Glozman, an attorney for Defendant Jinhuang Zheng, hereby certify that on this, the 9th day of July, 2018, I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

*s/ Vadim A. Glozman*
VADIM A. GLOZMAN