# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 14-cr-424-1 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JINHUANG ZHENG. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant Jinhuang Zheng's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 and for new trial under Federal Rule of Criminal Procedure 33 [325] and his supplemental motion for a new trial [350] are denied. This case is set for further status hearing on February 27, 2020 at 9:30 a.m. to set a sentencing date and to determine whether Defendant would like the assistance of counsel at sentencing.

## I. Procedural Background

On November 20, 2014, a grand jury returned a two-count indictment [34] charging Defendant Jinhuang Zheng and five co-Defendants with conspiracy to commit extortion and the use of extortionate means to collect an extension of credit, both in violation of Title 18, United States Code, Section 894(a)(1). On December 23, 2015, the Government filed motions *in limine* [149] and its *Santiago* proffer [151]. In its motions *in limine*, the Government requested that the Court exclude any evidence or argument designed to elicit jury nullification; exclude argument or evidence of Defendant's character for lawfulness; preclude comments regarding discovery or evidentiary rulings in the presence of the jury; preclude the defense from defining reasonable doubt; preclude presentation of a coercion or duress defense; prohibit cross-examination outside of the scope of Federal Rules of Evidence 608(b) and 609; admit various business and public records; and permit the government to recall a witness. For the most part, these motions were

routine—essentially asking the Court to confirm that counsel (on both sides) would agree to adhere to the Federal Rules of Evidence and Criminal Procedure.

On July 20, 2016, counsel for Defendant filed a response [198] to the Government's motions as well as a motion *in limine* to preclude the Government from presenting evidence regarding the severity of the victim's injuries [194]. Both sides filed response and reply briefs on the pending motions. Around the same time, Defendant filed a motion to sever his trial from that of co-Defendant Sun [199]. After full briefing on that motion, the Court issued a written opinion [236] denying Defendant's motion for severance on December 7, 2016.

On August 10, 2017, the Court held a final pretrial conference and issued an order [265] granting in part the Government's motions *in limine*. Specifically, the Court granted the motion to preclude arguments designed to elicit jury nullification and evidence for Defendant's character for lawfulness but denied the Government's motion to exclude evidence of a coercion defense. The Court accepted the Government's *Santiago* proffer after noting that neither Defendant nor co-Defendant Sun filed objections. In addition, the Court denied Defendant's motion to preclude evidence of the severity of the victim's injuries and reserved ruling on the remainder of the Government's motions *in limine*.

On May 8, 2018, a jury returned a verdict of guilty as to Defendant on both counts of the indictment, while reaching a not guilty verdict as to co-Defendant Sun.[1] On July 9, 2018, Defendant (through counsel) filed a motion for a new trial and a judgment of acquittal [325]. After full briefing, but before the Court could issue a ruling on the pending motion, Defendant filed a *pro se* supplement to the initial motion for a new trial filed by his attorneys [350]. As a result of Defendant's *pro se* filing—which (among other things) accused defense counsel of providing

---

[1] The remaining co-Defendants all entered guilty pleas.

2

ineffective assistance—counsel was granted leave to withdraw [see 354]. Briefing on the supplemental motion was delayed for several months at Defendant's request as he considered whether to retain counsel to assist in presenting his supplemental arguments. Ultimately no lawyer filed an appearance on Defendant's behalf, so Defendant elected to proceed *pro se* on his supplemental filing and the Court ordered full briefing, which is now complete.

## II.    The Evidence at Trial

The evidence at trial included: (1) testimony from the victim, Ronald Lin, who knew Defendant before June 1, 2014, and acknowledged that a debt was owed to Defendant for seafood purchases made on credit; (2) video and audio recordings made from the restaurant at which Lin worked on June 1, 2014, which show the discussions inside and an attack outside the restaurant; (3) testimony from co-Defendant Dong, who has a cooperation deal with the Government, about his dealings with Defendant and the other co-Defendants prior to, during, and after the attack; and (4) business and government records, including telephone, bank, and vehicle records. Defendant also testified at trial. He admitted seeking to collect money from Lin, meeting with Dong, and asking Dong to go with him to meet with Lin. Defendant also acknowledged that he and Dong agreed that others would come along for the meeting with Lin. But Defendant insisted that the others were not present for force or intimidation, but instead because Defendant feared for his own safety.

As Defendant acknowledges [325, at 5], "[m]ost of the facts surrounding the events leading up to [his] indictment are undisputed." Defendant's company, Ocean Fresh Seafood, was owed approximately $40,000 by Kobe Buffet, a restaurant owned in part by Lin. According to Dong's testimony, he had met Defendant in 2004 and was friends with him at the time of the events in question. In May 2014, Defendant advised Dong of the outstanding debt and showed him the

supporting paperwork. Dong agreed to help Defendant collect the debt. Dong subsequently contacted co-Defendant Daniel Zhu, who in turn recruited two other individuals (co-Defendants Chen and Sun) to help with the debt collection.

According to the trial testimony, on June 1, 2014, Defendant, Dong, and the three other men met in Chicago's Chinatown neighborhood. The five men then drove together in Defendant's Porsche SUV to Hibachi Grill, an Aurora restaurant, where Lin worked. According to Dong, on the drive from Chicago to Aurora, Defendant provided the paperwork to pass around the vehicle and explained that the objective was to collect money from a person who worked at the restaurant where the group was heading. Dong further testified that Defendant told the group that if the man agreed to pay, they would not give him a hard time, but if he did not agree, they would teach him a lesson. According to Dong's testimony, Defendant agreed to split the money collected from the man in Aurora with the others. Defendant disputes Dong's version of the conversation in the car. Whether the other men were there to intimidate Lin or simply to protect Defendant, it is undisputed that Defendant went to Aurora for the purpose of discussing the outstanding debt with Lin.

Footage from a security camera outside the restaurant that was shown at trial shows the five men entering the restaurant. Lin testified that he knew Defendant from prior business dealings and had previously discussed the outstanding debt with him. The video shows a conversation between Defendant and Lin. According to the testimony, Defendant said that he wanted to collect the debt. Lin responded that Defendant should sue the company. After a short time, Defendant asked Lin to step outside to continue the conversation. Shortly after the entire group walked through the front door to the restaurant and surround Lin. When Lin turns to walk back toward the restaurant, his path is blocked and Defendant appears to pull on the back of Lin's shirt. The video then shows an attack on Lin that lasted approximate 25 seconds and ends when other

individuals come upon the scene. Lin gets up from the ground and walks back inside the restaurant. Defendant and the others who arrived with him returned to the car and drove back to Chinatown. Defendant bought some of the men dinner and paid for their spa services that evening as well.

## III.    Post-Trial Motions

In his initial post-trial submission, Defendant (while still represented by counsel) sought a judgment of acquittal under Federal Rule of Criminal Procedure 29 as well as a new trial under Federal Rule of Criminal Procedure 33. His Rule 29 motion argued for acquittal on the ground that Dong's testimony was so beyond belief that it must be disregarded entirely and without that testimony the Government lacked sufficient evidence to sustain the convictions. He sought relief under Rule 33 on several grounds: (1) sufficiency and quality of the evidence (paralleling the argument under Rule 29), (2) impermissible cross-examination at trial, (3) prejudicial ruling on admissibility of victim photos at trial, (4) failure to sever trial from co-Defendant Sun, (5) erroneous jury instructions, and (6) cumulative errors. In Defendant's *pro se* supplemental submission, he raised two additional grounds for a new trial: (1) ineffective assistance of counsel and (2) alleged *Brady* violations. The Court will address each of the arguments in turn.

### A.    Legal Standards

Where, as here, a Rule 29 motion challenges the sufficiency of evidence, the court must consider that evidence in the light most favorable to the Government. *United States v. Johns*, 686 F.3d 438, 446 (7th Cir. 2012). The Court cannot "reweigh the evidence" or undertake its own assessment of witness credibility. *United States v. Peterson*, 823 F.3d 1113, 1120 (7th Cir. 2016) (citing *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir. 1997)); see also *United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009) ("[W]e do not reassess the weight of the evidence or second-guess the trier of fact's credibility determinations."). Instead, the Court asks whether the

record contains "no evidence" from which a reasonable jury could have found guilt beyond a reasonable doubt. *Peterson*, 823 F.3d at 1120 (citation omitted); *United States v. Stevenson*, 680 F.3d 854, 856 (7th Cir. 2012) ("[The court] will overturn a jury verdict for insufficiency of the evidence only if the record is devoid of evidence from which a reasonable jury could find guilt."); *United States v. Crowder*, 36 F.3d 691, 695 (7th Cir. 1994) ("[The court will] overturn the jury's verdict only when the record contains no evidence, regardless of how it is weighed."). The Seventh Circuit has observed that this standard of review will prove to be a "nearly insurmountable hurdle" for the Rule 29 movant. *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014).

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court can "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is appropriate "only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict." *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (citing *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). The Seventh Circuit has held that "[a] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citation omitted). A court should grant a motion for a new trial only if "'it would be a miscarriage of justice to let the verdict stand.'" *United States v. Chogsom*, 2017 WL 4467467, at *3 (N.D. Ill. Oct. 6, 2017) (quoting *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007)). Thus, Rule 33 motions are granted only in "exceptional circumstances" (*Reed*, 875 F.2d at 107) and in "the most 'extreme cases'" (*Peterson*, 823 F.3d at 1113).

### B.    Defendant's Arguments

#### 1.    Sufficiency of the evidence

As noted above, because the Court must view the evidence "in the light most favorable to the Government" (*Johns*, 686 F.3d at 446), the standard of review alone provides a "nearly insurmountable hurdle" for the Rule 29 movant (*Torres-Chavez*, 744 F.3d at 993). The question boils down to whether the record contains "no evidence" from which a reasonable jury could have found guilt beyond a reasonable doubt. *Peterson*, 823 F.3d at 1120. And that standard simply cannot be met in this instance.

While it is true that the Court found the Government's cooperating witness, Mr. Dong, to be frustrating and hard to believe at times, he was on the stand for several hours and many aspects of his testimony were corroborated by documents, other witnesses, the video recording, and logical inferences to be drawn from all of the above. Thus, his testimony was nowhere close to incredible as a matter of law, which is the standard for disregarding it when reviewing a Rule 29 motion. See *United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005); *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir. 1996). Moreover, defense counsel had ample opportunity to probe Dong's testimony for omissions and inconsistencies, laying before the jury the competing versions of what transpired in May and June 2014. And Dong's testimony was by no means the only evidence bearing on the key issues of knowledge and intent. The documents, the video, Defendant's own testimony, the victim's testimony, and the inferences that could be drawn from it all provided a basis for the jury to have come out as it did. To take just one example, if Defendant did not have knowledge or intent that the men he drove to Aurora were going to beat Lin if he refused to pay, why did he not try to intervene to stop the violence, and why did he treat the men to dinner and a spa afterwards, rather than admonishing and dismissing them for their bad behavior?

To be sure, the Court would not have been shocked or even surprised had the jury returned a not guilty verdict. Nevertheless, the guilty verdict that the jury reached was supported by ample evidence and was within the realm of reasonable conclusions that could be drawn from the evidence elicited at trial. A court need say no more in rejecting a Rule 29 challenge, for it is not the province of the trial judge to reweigh the testimony or to make credibility determinations.

Defendant's criticisms of Dong's credibility fare no better in convincing the Court to order a new trial under Rule 33. The jury heard testimony and arguments from counsel for six days; the jury made its determination based on its assessment of the evidence as a whole; that evidence was more than sufficient to support the verdict rendered. Simply put, Defendant received a fair trial and there is no basis for ordering another one based on the sufficiency of the evidence.

## 2.    Impermissible cross-examination

Defendant next argues that his right to a fair trial was compromised when the Court permitted a particular line of cross-examination while Defendant was on the witness stand. Specifically, Defendant points to questioning about a statement that he allegedly made to co-Defendant Daniel Zhu, which Defendant claims was improper because the Government did not present testimony from Zhu himself to confirm that the statement in question had in fact been made. The Government defends its question—and the Court's ruling allowing it—on the ground that it had a good faith basis for believing that the conversation took place. According to the Government, Zhu relayed the substance of the conversation to government agents, who memorialized Zhu's statement and provided it to the prosecutors, who in turn disclosed it to the defense in advance of trial.

Defendant dismisses "the word of Zhu" as a valid good faith basis, pointing to his prior felonies, gang affiliation, and other bad conduct (including while ostensibly cooperating with the

Government) as evidence of his extraordinary lack of credibility. But a good faith basis requires only "a well reasoned suspicion that a circumstance is true," not definitive proof, *United States v. Beck*, 625 F.3d 410, 418 (7th Cir. 2010), and many witnesses in criminal trials are less than pristine when it comes to matters of credibility. Given the Government's pre-trial disclosure and the fact that at trial Defendant did not deny that the conversation took place, Defendant has not undercut the Court's conclusion that a good faith basis for asking the question existed then and now. And in neither his opening nor his reply brief does Defendant cite any on-point authority for the proposition that the Government was obligated to prove-up the content of the conversation.[2]

Finally, any error as to the scope of cross-examination was harmless, for it was not a focal point of either the Government's case-in-chief or its closing argument. The Government made no reference during closing argument to the conversation itself or about what the Government believes was actually said. Given the insignificance of this brief line of questioning over the course of a six-day trial, any conceivable prejudice to Defendant falls well short of the standard required for a new trial under Rule 33.

### 3.     Admissibility of victim photos

Defendant next reiterates a relevance objection originally presented in his motion *in limine* to exclude photographs of the victim's injuries. The Court denied Defendant's motion before trial [see 265, at 19-21] and reaches the same conclusion now. As the Government established, the photographs in question are directly relevant as proof of an element of the charged crimes— namely, the use of "extortionate means," which is defined by statute as "any means which involves

---

[2] Neither *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016), nor *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965), addresses the scope of permissible cross-examination questions or any obligation to prove-up the content embedded in those questions. In *Jordan*, the prosecutor made factual assertions during closing arguments that were not supported by evidence introduced at trial. 831 F.3d at 847. And in *Turner* the trial was potentially tainted because jurors "freely mingled and conversed" with the government's primary witness. 379 U.S. at 472-73. These cases are not on point.

the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of another person." 18 U.S.C. § 891(7).

Of course, evidence admissible as relevant under Rule 401 remains subject to exclusion under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. But the photos easily clear the Rule 403 balancing test, for their probative value is high—as they tend to establish intent to use enough force to intimidate and cause harm to the victim for the purpose of compelling him to pay the claimed debt—and the prejudice is modest, because the photographs do not depict the kind of gruesome or horrifying images—for example, a dead body, a gunshot wound, or excessive bleeding—that would incite a jury to irrational behavior. Instead, the images show cuts and abrasions on Victim A's face, neck, and arms and some blood on his shirt and on the ground outside the restaurant.

Finally, the quantity of photographs in the exhibit does not change the Rule 401/403 calculus. Several of the photographs do not depict injuries at all; they show the restaurant and the general area in which the beating occurred. Other photographs show multiple views of the victim, with rulers occasionally added to give the jurors a sense of the extent of the cuts and abrasions. Each photograph appears to illustrate a point that is relevant to the issues for the jury's consideration, and thus the overall presentation did not run afoul of the caution against cumulative evidence that wastes the jurors' time.

### 4. Motion for severance

Defendant also argues that his joint trial with co-Defendant Sun compromised his right to a fair trial. Before trial, the Court addressed many of these issues in its opinion [236] denying

Defendant's motion for severance. After trial, Defendant presents three reasons why he believes the Court's refusal to sever his case from Sun's resulted in prejudice warranting a new trial: (1) the government's use of part of one of Sun's pre-trial admissions during trial amounted to a *Bruton* violation, (2) Defendant's defense theory at trial was irreconcilable with Sun's theory, and (3) the jury's split verdict.

Federal Rule of Criminal Procedure 8 allows an indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8. Joint trials conserve judicial resources and avoid costly, duplicative trials. *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008). Thus, "[t]here is a strong preference that coconspirators be jointly tried, particularly where, as here, they were indicted together." *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011); see also *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007) ("It is well settled that co-conspirators who are charged together generally should be tried together.").

Under Rule 14(a), the Court has authority to sever co-defendants' trials when "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A defendant who moves for severance must demonstrate that, absent severance, he is likely to be unable to obtain a fair trial. *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000); see also *United States v. Donovan*, 24 F.3d 908, 915 (7th Cir. 1994) ("The defendant's burden is to demonstrate 'severe prejudice' resulting from the district court's refusal to sever." (quoting *United States v. Curry*, 977 F.2d 1042, 1050 (7th Cir. 1992))). To meet his burden, the defendant must demonstrate that "there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v.*

11

*United States*, 506 U.S. 534, 539 (1993). "'In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *Goodwin*, 496 F.3d at 644 (quoting *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006)).

A defendant is not entitled to severance "merely because [he] may have a better chance of acquittal in [a] separate trial[]." *Zafiro*, 506 U.S. at 540. "'Even a showing that two defendants have mutually antagonistic defenses, that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right.'" *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (quoting *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001)); see also *United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010) (explaining that *Zafiro*, 506 U.S. at 538, "expressly held that severance is not required when codefendants present mutually antagonistic defenses"); *Carrillo*, 435 F.3d at 778 ("The mere presentation of mutually antagonistic defenses does not require severance."). Therefore, "finger-pointing" and "blame-shifting among codefendants, without more, does not mandate severance." *Plato*, 629 F.3d at 650-51. In such cases, "'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539); see also *Zafiro*, 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

Defendant's arguments are not persuasive. First, the Government's use of Sun's statement did not jeopardize defendant's *Bruton* rights. In *Bruton*, the Supreme Court found prejudice only when the co-defendant's admissions specifically named the defendant and implicated the defendant in the commission of their crime. Such "powerfully incriminating" extrajudicial

statements could be sufficiently prejudicial to warrant a new trial. *Bruton v. United States*, 391 U.S. 123, 127-37 (1968). Here, by contrast, Sun's statements to law enforcement were not "facially incriminating" to Defendant. See *United States v. Javell*, 695 F.3d 707, 712 (7th Cir. 2012). The part of Sun's statement that the Government introduced at trial merely indicated what language Sun could speak. It did not even reference Defendant, and thus could not have been so "powerfully incriminating" as to jeopardize Defendant's *Bruton* rights. Perhaps that is why, when the issue of introducing this brief snippet to Sun's prior statement arose at trial, defense counsel for both Defendants stated that they had no objection to that extremely limited presentation. Any argument on that point now is waived. But it would be unpersuasive in any event, for Defendant gives no reason to think the verdict could have been different on the charges against him if the jurors did not hear testimony on what languages a co-Defendant spoke.

Defendant also has failed to show how his and Sun's defenses were irreconcilable. In fact, both Defendants denied having any knowledge or intent that threats would be made or that anyone would be beaten. Consistent with the testimony about his language skills, Sun denied any knowledge of the reason that the five men went to the restaurant in Aurora at all. Defendant acknowledged that he knew the destination in advance, but was only going there to talk and had taken the others for his own protection, not to intimidate Lin into paying on the spot. Those defenses are not mutually antagonistic. Nothing in Sun's defense implicated Defendant. Because the two defense strategies were compatible, Defendant cannot show actual prejudice from the Court's denial of his severance motion. *United States v. Mansoori*, 304 F.3d 635, 664 (7th Cir. 2002).

Finally, the jury's split verdict provides no support for Defendant's contention that the joint trial prejudiced him. As the Seventh Circuit has explained, "split verdicts imply that the jury

reached independent conclusions as to each defendant without making up its mind before the close of the evidence." *United States v. Morales*, 655 F.3d 608, 633 (7th Cir. 2011) (citation omitted).

In sum, the evidence as it relates to Defendant was ample to support the verdict that the jury reached, and there has been no showing of either a *Bruton* violation or mutually antagonistic defense theories. In these circumstances, the joint trial was proper and provides no basis for relief in the form of a new trial.

### 5. Jury instructions

In his opening post-trial brief, Defendant raised a general argument that the Court erred in giving certain jury instructions and refusing certain instructions proposed by Defendant. Defendant did not identify any specific instructions; instead, he simply incorporated by reference his objections during the instruction conference. This opening left the Government, as well as the Court, to plumb the docket sheet and trial transcripts "like pigs, hunting for truffles." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Finally, in his reply brief, Defendant actually pointed to a specific instruction—regarding whether government cooperators can conspire with defendants—that he deems objectionable. Compare [286 (Defendant's proposed instruction)] with [293 (Government's proposed instruction, which the Court gave)].

Waiver aside, the better practice certainly would have been to specify in the opening brief any specific instructional error of sufficient gravity to warrant a new trial. But the argument is not persuasive in any event. Because there were no pattern instructions on this issue, counsel each submitted a proposed instruction. As the Court explained (see May 7 Tr. at 569:3-576:12), it selected the instruction that both accurately reflected the law and best explained it to the jury in relation to the specific facts of this case—in which a reasonable juror could have concluded that co-Defendant Zhu was at times a rogue cooperator. Contrary to Defendant's suggestion, the

instruction given did leave to the jury the determination of whether the individual in question was "acting outside the scope" of his cooperation arrangement [see 337, at 6], while providing the jury appropriate guidance for making that assessment. Defendant was entitled to nothing more. See *United States v. Turner*, 836 F.3d 849, 859 (7th Cir. 2016); *United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014) ("Reversal is warranted only where the reviewing court is left with the definite and firm conviction that a mistake has been committed." (citation and quotation marks omitted)); *United States v. Boucher*, 796 F.2d 972, 976 (7th Cir. 1986) (holding that defendant was not denied a fair trial by court's refusal to give defendant's requested instruction where instruction given by trial judge fairly presented the case).

### 6. Cumulative errors

In view of the foregoing discussion, the Court does not believe that Defendant has raised any errors—much less any error that materially deprived Defendant of a fair trial. Accordingly, the cumulative error doctrine does not apply. See *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) ("If there are no errors or a single error, there can be no cumulative error.").

### 7. Ineffective assistance of counsel

In a supplemental *pro se* filing, Defendant argues that he should be granted a new trial on account of ineffective assistance of counsel. In support of that contention, Defendant raises two principal arguments: (1) counsel filed inadequate responses to the Government's motions *in limine* and *Santiago* proffer and (2) counsel failed to impeach witness (and victim) Ronald Lin in regard to his bankruptcy.

To succeed on a claim of ineffective assistance of trial counsel, Defendant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceedings would have been different had the

unprofessional errors not occurred. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). There is a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689); *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland's* high bar is never an easy task")). The question is not whether counsel's representation deviated from best practice, but whether counsel's representation amounted to incompetence under "prevailing professional norms." *Harrington*, 562 U.S. at 105. And if Defendant cannot establish prejudice, then the Court need not consider whether the counsel's assistance was ineffective. *Id.*

### a.    Motions *in limine* and *Santiago* proffer

Defendant is mistaken in asserting that his attorneys failed to respond at all to the Government's motions *in limine*. In fact, counsel did file a brief in opposition [198] to certain of the Government's requests, and many of the specific issues as to which Defendant did not respond were typical, boilerplate motions that have no real purpose other than to confirm both sides' shared understanding of what the rules of evidence and criminal procedure require anyway. All of the issues worth responding to were addressed by both sides, and the Court issued a 22-page memorandum and opinion and order [265] explaining its rulings.

Defendant's attorneys did not respond to the government's *Santiago* proffer. However, it is the common practice of judges in this district—followed by the undersigned—to closely scrutinize *Santiago* proffers under the familiar legal standards for the admission of co-conspirator statements. The Court undertook that inquiry and found the Government's submission proper. Any claim of ineffective assistance relating to the *Santiago* proffer in this case thus is doomed to fail. See, *e.g.*, *Harris v. United States*, 2018 WL 3158508, at *5 (N.D. Ind. June 27, 2018) (citing *Long v. United States*, 847 F.3d 916, 921 (7th Cir. 2017) (noting that the defendant alleged no facts

suggesting that the suppression motion would have succeeded)); *United States v. Smith*, 2007 WL 4292799, at \*9 (N.D. Ill. Dec. 4, 2007) (rejecting the argument that counsel was ineffective for failing to respond to a *Santiago* proffer when the court found that the evidence established a conspiracy by the preponderance of evidence). cf. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required the defendant show that the motion would have been meritorious.").

### b. Impeachment based on Lin's bankruptcy

Defendant also complains about the failure of his lawyers to impeach Government witness Lin about his bankruptcy. The decision not to impeach a witness—either at all, or with respect to any particular issue—is "normally considered a strategic choice within the discretion of counsel." *Bryant v. Brown*, 873 F.3d 988, 996-97 (7th Cir. 2017) (quoting *Jones v. Butler*, 778 F.3d 575, 584 (7th Cir. 2015)) (holding that the defense counsel was not ineffective when counsel did not impeach a witness to avoid drawing more attention to damaging testimony); *Jones*, 778 F.3d at 583 (holding that counsel made a reasonable decision to not impeach a witness on a minor point which supported the government's theory). In addition, even if it can be shown that the decision to forego impeachment was *not* strategic, no relief is warranted absent a showing of prejudice. *Jones*, 778 F.3d at 578 (holding that the defendant failed to prove his claim of ineffective assistance, even though counsel's representation was deficient, because the impeachment did not attack key evidence and the defendant was not prejudiced).

From the Government's perspective, Lin was the principal victim of the crime charged, and thus a key witness. Defense counsel treated him as such, subjecting him to rigorous cross-examination of a wide range of subjects, including his ownership interest in Kobe Buffet and

whether he had any ties to the Chinese mafia. Of course, there is some risk involved in attacking a witness who has been portrayed in the Government's case-in-chief as a victim, so counsel likely felt a need to pick-and-choose among the various subjects on which to attack Lin. Moreover, the bankruptcy might be said to advance the Government's theory of the case, because it underscored that a debt was owed and unlikely to be paid—which would provide a rationale for Defendant's desperation to collect it through the use of extortionate means. All things considered, the case for omitting any cross-examination on the bankruptcy was plausible, which places it within the realm of reasonable strategy choices on which counsel should not be second guessed.

But even assuming that defense counsel's decision not to pursue this line of impeachment was inappropriate, Defendant has not proven that he suffered prejudice. Omitting cross-examination on Lin's bankruptcy was not an obvious miss by defense counsel—and, as noted above, presented a double-edged sword. Moreover, it was tangential at best to the principal subjects of Lin's testimony, which focused on his relationship with Defendant and the events leading up to the beating at the restaurant. When viewed in the totality of the direct and cross-examinations of Lin, any focus on the bankruptcy would have been a minor point. And when considered in light of all the evidence in the case, including the video and the testimony of Dong and Defendant himself, the Court sees no chance that cross-examination of Lin on his bankruptcy would have had any effect on the outcome of the trial. Accordingly, Defendant cannot meet the burden of establishing prejudice under *Strickland* and is not entitled to a new trial on this ground.[3]

---

[3] Although a colorable claim of ineffective assistance of counsel can require an evidentiary hearing, Defendant's claims here—relating to perceived inadequacies in his lawyer's responses to motions *in limine* and the Government's *Santiago* proffer and an omitted topic of potential cross-examination—are so unlikely to have affected the outcome of this case that an evidentiary hearing would be a waste of time. *United States v. Simpson*, 864 F.3d 830, 834 (7th Cir. 2017) (quoting *United States v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991)) (holding that a district court does not abuse its discretion by declining to schedule a hearing when "there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial").

### 8. *Brady* violations

Defendant's final ground for seeking a new trial rests on his allegation that the Government failed to disclose impeachment evidence regarding Ronald Lin's bankruptcy filings, ownership of Kobe Buffet, and various other allegedly fraudulent activities. Under *Brady v. Maryland*, 373 U.S. 83 (1963), "a defendant can obtain a new trial if he shows that evidence suppressed by the government was favorable and material to either his guilt or punishment." *United States v. Ballard*, 885 F.3d 500, 504 (7th Cir. 2018). To establish a *Brady* violation, a defendant must show (1) the government suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial. *United States v. Shields*, 789 F.3d 733, 746 (7th Cir. 2015). "Evidence is favorable either because it is exculpatory, or because it is impeaching." *Ballard*, 885 F.3d at 504 (citation and quotation marks omitted). Information is material if "there is a reasonable probably that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* at 505 (citation and quotation omitted). "In order to have a reasonable probably of a different result, the suppressed evidence must undermine confidence in the outcome of the trial." *Id.* (citation and quotation marks omitted). It is "the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses." *Taglia*, 922 F.2d at 415. As explained below, Defendant's argument fails for at least two reasons. First, the Government did not suppress any evidence; second, the evidence regarding Lin's bankruptcy is not material in any event.

The Seventh Circuit has held that evidence is not considered suppressed if the defendant has an opportunity to confront and use it at trial. *United States v. Lawson*, 810 F.3d 1032, 1043 (7th Cir. 2016). Here, the record makes clear that the Government provided information about Lin's financial situation and his relationship to Kobe Buffet to Defendant long before trial. In

February 2016, the Government produced a report to defense counsel that detailed Lin's investment in Kobe Buffet. It stated that Lin invested approximately $20,000 in Kobe Buffet and that he received 10 percent of the profits of the Kobe Buffet Restaurants. *Id.* During trial, both sides elicited from Lin the fact that he was a part owner of Kobe Buffet. The bankruptcy was not a secret, either. Defense counsel plainly were aware of it at the time of the trial. Indeed, the Government did not—and could not—suppress Lin's bankruptcy, which was publicly-available information, accessible on PACER by inputting Lin's first and last names. See *Shields*, 789 F.3d at 747; see also *United States v. White,* 970 F.2d 328, 337 (7th Cir. 1992) (finding no *Brady* violation where, among other things, defendants "had access to the bankruptcy file from which Center extracted and photocopied the notes he turned over to the government"). In short, the government turned over the information it had regarding Lin's ownership in the Kobe Buffet Restaurants, and the defense knew about Lin's bankruptcy at the time of the trial and could have elicited testimony about it had they wished to do so.

Finally, although Defendant's claim that the Government suppressed information regarding Lin's bankruptcy is not accurate, even if it were the information would not cast doubt on Defendant's guilt. To the contrary, as explained above, any impeachment value would have been minimal, and might even have backfired. Furthermore, even without Lin's testimony, ample evidence from the documents, the video, and the testimony of other witnesses supported a finding of defendant's guilt. A new trial therefore is not warranted on this basis, either. See *Taglia*, 922 F.2d at 415 (noting that it is "the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses"); *United States v. Fallon*, 348 F.3d 248, 252 (7th Cir. 2003) (internal citations omitted) (holding that the nondisclosure of impeachment evidence was not grounds for a new trial because

there was "overwhelming evidence" of the defendant's guilt and no reasonable possibility of a different result).

## IV.    Conclusion

For the reasons stated above, Defendant Jinhuang Zheng's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 and for new trial under Federal Rule of Criminal Procedure 33 [325] and his supplemental motion for a new trial [350] are denied.  This case is set for further status hearing on March 3, 2020 at 9:45 a.m. to set a sentencing date and to determine whether Defendant would like the assistance of counsel at sentencing.


Dated: February 21, 2020

_____
Robert M. Dow, Jr.
United States District Judge